UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| BRIAN WOODS,<br><br>              Plaintiff,<br><br>vs.<br><br>JDHQ HOTELS LLC; ATRIUM HOSPITALITY LP,<br><br>              Defendants. | 4:23-CV-04026-RAL<br><br><br>ORDER DENYING MOTION TO COMPEL |

**INTRODUCTION**

A discovery dispute is before the court on the amended slip-and-fall complaint of Brian Woods, who alleges premises liability or, in the alternative, negligence on the part of JDHQ Hotels LLC and Atrium Hospitality LP. Docket No. 4, ¶¶ 1, 6–25. Defendant Atrium Hospitality LP moves this court to compel production of information and documents withheld by Mr. Woods. Docket No. 36 at p. 1. Atrium further seeks an award of attorney's fees as recompense for bringing the motion. Docket No. 37 at pp. 8–9. Pursuant to 28 U.S.C. § 1332, original jurisdiction is premised on the parties' diversity of citizenship. Docket No. 4, ¶¶ 1–4. This opinion resolves Atrium's motion to compel [Docket No.

36], which the district court judge referred to this magistrate judge.  Docket No. 40.

## FACTS[1]

On May 22, 2022, Brian Woods was working as a contractor at the Sheraton Hotel in Sioux Falls, South Dakota.  Docket No. 4, ¶¶ 1, 6–7.  While at the Sheraton, Mr. Woods slipped on a wet floor and fell to the ground.  Id. ¶¶ 7, 9.  Mr. Woods alleges this fall caused "injuries to [his] left ankle, foot, and knees."  Id. ¶ 11.  Mr. Woods alleges these injuries "required medical treatment and ultimately surgery on his left ankle," and claims, as damages, "pain and suffering, permanent impairment and disability, scarring, loss of enjoyment of the capacity of life, loss of past and future earned wages, past and future medical costs and expenses, and other general and special damages."  Id. ¶ 12.

Defendant JDHQ Hotels LLC was the owner and franchisee of the Sheraton at the time of the incident.  Id. ¶ 2.  Defendant Atrium Hospitality LP was the manager and operator of the Sheraton at the time of the incident.  Id. ¶ 3.

Pertinent to the instant motion are discovery requests propounded on Mr. Woods by Atrium.  See Docket No. 36.  Interrogatory No. 20 seeks collateral source information.  Docket No. 37 at pp. 1–2.  Request for Production No. 25 seeks signed HIPAA authorizations.  Docket No. 36 at p. 1.  Mr. Woods disputes any legal requirement to provide either.  See generally Docket No. 41.

---

[1] To consider Atrium's motion, the court takes the facts as asserted in the amended complaint and plaintiff's briefs.  No imprimatur of the court as to their veracity is intended.

**DISCUSSION**

A.   **Discovery, Generally**

"[D]iscovery is a[n] investigatory tool intended to help litigants gain an understanding of the key persons, relationships, and evidence in a case and . . . the veracity of those persons and purported evidence." Sentis Grp., Inc. v. Shell Oil Co., 763 F.3d 919, 926 (8th Cir. 2014). The process of discovery aids in both "narrowing and defining the disputed legal and factual issues." Williams v. McClain, 708 F. Supp. 1086, 1090 (W.D. Mo. 1989).

The Federal Rules of Civil Procedure provide for several devices by which information may be exchanged during discovery. These include interrogatories and requests for the production or inspection of documents. See FED. R. CIV. P. 33–34. "Interrogatories allow a party to learn facts within an adversary's knowledge, so that questions of fact may be reduced to a minimum before trial." Stedillie v. Milford Cas. Ins. Co., 4:23-CV-04048-KES, 2024 WL 449630, at *2 (D.S.D. Feb. 6, 2024) (quoting Onofrio v. Am. Beauty Macaroni Co., 11 F.R.D. 181, 184 (W.D. Mo. 1951)) (cleaned up). When documents exist that "relate to any matter that may be inquired into under Rule 26(b)," parties may use a request for production to seek copies or inspection of them, so long as the documents are "in the responding party's possession, custody, or control." Huggins v. Fed. Express Corp., 250 F.R.D. 404, 405 (E.D. Mo. 2008) (citation omitted); FED. R. CIV. P. 34(a).

Rule 26(b) limits discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED.

R. CIV. P. 26(b)(1). Such relevance "is broader than what is admissible at trial; information sought in discovery need only be 'reasonably calculated to lead to the discovery of admissible evidence.' " Pearson v. Royal Canin USA, Inc., 4:22-CV-04018-KES, 2023 WL 5916437, at *3 (D.S.D. Sept. 11, 2023) (quoting Chavis Van & Storage of Myrtle Beach, Inc. v. United Van Lines, LLC, 784 F.3d 1183, 1198 (8th Cir. 2015)).

When a party refuses to produce discovery that meets these criteria, Rule 37 allows the requesting party to seek "an order compelling disclosure or discovery." FED. R. CIV. P. 37(a)(1); see also FED. R. CIV. P. 37(a)(3)(B)(iii)-(iv) (motions specific to interrogatories and requests for production). The movant "must make a threshold showing that the requested information falls within the scope of discovery under Rule 26(b)(1)." Sprint Comm. Co. L.P. v. Crow Creek Sioux Tribal Ct., 316 F.R.D. 254, 263–64 (D.S.D. 2016) (citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992)). If that showing is successful, the resisting party bears the burden of convincing the court otherwise. Id. at 264 (citations omitted). "If the court determines the requests to be outside the scope allowed by Rule 26(b)(1), it must fashion appropriate limits." Stedillie, 2024 WL 449630, at *3 (citing FED. R. CIV. P. 26(b)(2)(C)(iii)).

South Dakota substantive law governs this diversity action for negligence. Jordan v. Nucor Corp., 295 F.3d 828, 834 (8th Cir. 2002); see also RESTATEMENT (SECOND) OF TORTS § 343 (AM. LAW INST. 1965) (premises liability a form of negligence). Federal rules, however, govern procedure such as discovery. Bradshaw v. FFE Transp. Servs., 715 F.3d 1104, 1107 (8th Cir.

2013). When an "evidentiary issue is intertwined with a state's substantive policy," state law may govern if the federal rule would "abridge, enlarge or modify [the state's] substantive right." Lindholm v. Hassan, 369 F. Supp. 2d 1104, 1106 (D.S.D. 2005); Hanna v. Plumer, 380 U.S. 460, 466–70 (1965); 28 U.S.C. § 2072(b). But such concerns are absent when the application of federal rules has no effect, or only an incidental effect, on a party's substantive rights. Burlington N. R.R. Co. v. Woods, 480 U.S. 1, 5–6 (1987).

### B.     Interrogatory No. 20

Interrogatory No. 20 asks:

> Are there any collateral sources of payment which have paid, may pay, or will pay or may pay in the future, any economic losses claimed in this case? If so, for each identify fully each such collateral source by name, address, and nature of policy, obligation, employment benefit, or otherwise by which the same is or may be paid; state all amounts paid by collateral sources to date and to whom paid; state what future obligations will or may be paid by such collateral sources; state whether such amounts are required to repaid [sic] in full or in part, and if in part, what part; state all conditions and terms which exist before repayment by you is required to be made; and identify who purchased the insurance coverage or benefit so provided and who paid the cost thereof.

Docket No. 38-1 at p. 7.

Atrium argues this evidence is discoverable for the purpose of impeachment and to prove malingering. Docket No. 37 at pp. 5–6; Docket No. 42 at pp. 1–4. Mr. Woods objects on the grounds that the information is "protected by the collateral source rule, is irrelevant, and not likely to lead to the discovery of admissible evidence." Docket No. 38-2 at p. 11; Docket No. 41 at pp. 3–5.

South Dakota's collateral source rule operates as both a rule of evidence and a rule of damages. Papke v. Harbert, 738 N.W.2d 510, 532 (S.D. 2007). "Applied as a rule of evidence, [it] prohibits defendants from offering proof of collateral source benefits received by the plaintiff, independent of the tortfeasor, which compensate the plaintiff, in whole or in part, for his or her injury." Id. (citations omitted). "Applied as a rule of damages, the collateral source rule prohibits defendants from reducing their liability because of payments made to the plaintiff by independent sources." Id. (citations omitted).

The substantive right offered by the collateral source rule is the plaintiff's right to not have damages reduced because of collateral sources of income. Thomas v. Sully County, 629 N.W.2d 590, 594 (S.D. 2001). There is no risk of that proscribed outcome at this stage in the proceedings. The question before the court is whether Mr. Woods' collateral source information is discoverable. Because Rule 26 answers the question—it governs. Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 398 (2010).

1. **Whether Collateral Source Information May be Discovered to Prove Malingering**

Atrium first argues that collateral source information is discoverable to prove malingering. Docket No. 37 at p. 5. As a general proposition, Atrium is correct. Both Eighth Circuit and South Dakota case law imply as much. See Vanskike v. ACF Indus., Inc., 665 F.2d 188, 200 (8th Cir. 1981); Cruz v. Groth, 763 N.W.2d 810, 814 (S.D. 2009). But antecedent to the discovery of evidence is the requirement that sought discovery be relevant "to any party's claim or

defense." FED. R. CIV. P. 26(b)(1).  As Mr. Woods correctly observes, Atrium has not pleaded malingering as an affirmative defense.  Docket No. 41 at p. 4; see Docket No. 31 at pp. 3–4.  Atrium contends that Mr. Woods "is requiring Atrium to make a claim of malingering without providing access to the documents that would support such a claim."  Docket No. 42 at p. 4.  But that is how discovery works.  "Any party's claim or defense" means "any party's *pleaded* claim or defense."  Cf. FED. R. CIV. P. 26(b)(1) advisory committee's note to 2015 amendment ("Discovery that is relevant to the parties' claims or defenses may also support amendment of the pleadings to add a new claim or defense that affects the scope of discovery.").  To hold that discovery is relevant as to any speculative defense is to extend relevance infinitely—an absurd outcome the court cannot compel.

## 2. Whether Collateral Source Information May be Discovered to Impeach

Next, Atrium states that "[a]s made clear by Cruz and Stock[2] the requested information is relevant to whether Plaintiff cared for himself properly after his alleged injuries.  Furthermore, the records are relevant to the extent Plaintiff will claim financial hardship at trial due to his injuries."  Docket No. 37 at p. 6.  Reading these arguments in coordination with Cruz and Stock, the court (and, in part, Mr. Woods) understands them to refer to Stock's assertion that "collateral source evidence . . . could become admissible if Plaintiff . . . were, for example, to testify that she did not seek additional treatment because

---

[2] Stock v. BNSF Ry. Co., 2015 U.S. Dist. LEXIS 124063 (D.S.D. Sept. 17, 2015).

she could not afford it." Stock, 2015 U.S. Dist. LEXIS 124063, at *4 (citing Cruz, 763 N.W.2d at 813–14); See Docket No. 41 at pp. 4–5.

In Cruz, despite a statement made pre-trial that the plaintiff "didn't go to the doctor because the defendant's insurance . . . wouldn't pay for it," the trial court granted a motion in limine preventing the mention of collateral source income that might have helped cover medical care. 763 N.W.2d at 811–12 (alteration in original). In resistance to the motion in limine, the defendant argued that similar assertions were anticipated at trial. Id. The defendant predicted correctly. At trial, several statements were made to similar effect, such as "it's not easy going to a doctor who's – without being able to afford to go." Id. at 812. Hamstrung by the court's order, the defendant could not impeach the statements with Mr. Cruz's collateral source income. Cf. id. at 811–14.

On appeal, the defendant asked the South Dakota Supreme Court to take a second look at the collateral source rule and whether the trial court abused its discretion by barring such evidence for impeachment. Id. at 811. The court aligned itself with the majority rule that collateral source information could be admissible, subject to balancing under (South Dakota's) Rule 403, to prove malingering. Id. at 814.

But the court "remain[ed] skeptical" of using collateral source evidence solely for impeachment because of the risk of "enfeebl[ing] the collateral source rule and render[ing] it ineffectual"—as well as the inevitability of mini-trials related to medical coverage. Id. "Nonetheless," the court reaffirmed its position

on malingering. Id. In wording its holding in that way, the court blurred the line between impeachment and malingering—suggesting that whether or not the instant goal of introducing collateral source evidence was to impeach, such impeachment must be tied to proving malingering.

And so, while the Stock court relied on Cruz to state "collateral source evidence, though typically inadmissible, could become admissible if Plaintiff is malingering *or* if Plaintiff were, for example, to testify that she did not seek additional treatment because she could not afford it." 2015 U.S. Dist. LEXIS 124063, at *4 (citing Cruz, 763 N.W.2d at 813–14) (emphasis added), a fairer summary of Cruz would state "collateral source evidence, though typically inadmissible, could become admissible if Plaintiff is malingering *and* if Plaintiff were, for example, to testify that he did not seek additional treatment because he could not afford it." Cf. 763 N.W.2d at 813–14. In denying relief, the Cruz court made note that "there was no corroborating evidence of malingering." Id. at 814.

But whether disjunctive or conjunctive, neither Stock nor Cruz help Atrium's argument because nowhere in the record does Mr. Woods state that he cannot afford medical care.

To be sure, "[t]he scope of Rule 26 includes the discovery of information sought for impeachment purposes." Oyen v. Land O'Lakes, Inc., No. CIV-07-4112, 2009 WL 349160, at *5 (D.S.D. Feb 10, 2009). But to repeat, the reference for relevance for all discovery is as to the claims or defenses of any party. FED. R. CIV. P. 26(b)(1); cf. Boyle's Famous Corned Beef Co. v. NLRB,

400 F.2d 154, 162 (8th Cir. 1968) ("The complaint . . . set[s] [the] standard of relevance which shall govern the proceedings.") (citation omitted); see FED. R. CIV. P. 26(b)(1) advisory committee's note to 2000 amendment ("Similarly, information that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might be properly discoverable. In each instance, the determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action.").

In Pearson v. Royal Canin USA, Inc., this court authorized discovery of the plaintiff's prior employee files for the purpose of impeachment, because he put his career successes at issue in his complaint. 2023 WL 5916437, at *10. "He reiterated and developed these claims at his deposition," from which it was fair for the defendant to assume similar statements would be made at trial. Id. (citing Flowers v. Owens, 274 F.R.D. 218, 221 (N.D. Ill. 2011)). It became the defendant's "right to investigate the authenticity of [the plaintiff's] assertions." Id. (citing Sentis Grp., Inc., 763 F.3d at 926).

Here, Mr. Woods has made no assertions to which the discovery sought is relevant. Put simply, Mr. Woods has not said he "did not seek additional treatment because [he] could not afford it." Stock, 2015 U.S. Dist. LEXIS 124063, at *4 (citation omitted).

Alternatively reading Atrium's arguments with a focus on their plain language does not move the needle. First, neither Cruz nor Stock stand for the proposition that collateral source information is relevant to show whether

someone "cared for himself properly." Docket No. 37 at p. 6; see generally 763 N.W.2d 810; 2015 U.S. Dist. LEXIS 124063.  That inquiry is one of medical science.  It cannot be resolved with details of finance.  Second, if Mr. Woods "claim[ed] financial hardship," it was in the form of alleging the damages he incurred as a result of his fall.  Docket No. 37 at p. 6; see Docket No. 4, ¶¶ 12, 25.  Discovery of collateral sources bent toward "impeaching" damages would strike at the very heart of the collateral source rule.  Papke, 738 N.W.2d at 532.  That renders this interrogatory not "reasonably calculated to lead to the discovery of admissible evidence," and its answer cannot be compelled.  Chavis Van & Storage, 784 F.3d at 1198.

C.   **Request for Production No. 25**

Request for Production No. 25 seeks:

> Fully executed HIPAA authorizations permitting Defendant to obtain all medical records, including x-rays, MRIs, CT scans, CAT scans, and imaging studies, from any medical provider that treated Plaintiff for injuries Plaintiff alleges were caused by this Accident.

Docket No. 38-2 at p. 26.

Atrium argues that the provision of medical records "does not excuse [Mr. Woods] from his obligation to provide a HIPAA authorization."  Docket No. 42 at pp. 4–5.  Atrium further argues that it is unable to get missing medical records from Mr. Woods without the authorizations.  Id. at p. 5; Docket No. 37 at p. 7.  Mr. Woods objects on the grounds that "there is no overarching rule requiring a plaintiff to sign a release" and further argues that Mr. Woods' medical records, the ostensible impetus of the request, have already been provided.  Docket No. 41 at p. 6.  Mr. Woods is correct.

There is no obligation under Rule 34 that a party provide a HIPAA authorization—period.  See generally FED. R. CIV. P. 34.  The rule explicitly allows a responding party to determine the method by which it will supply requested documents.  FED. R. CIV. P. 34(b)(2)(B) ("The responding party may state that it will produce copies of documents or of electronically stored information instead of permitting inspection.").  The case Atrium relies on, Scott v. City of Bismarck, acknowledges that option but proposes that under an "expansive[]" reading, it "could be viewed as applying only . . . when the documents are in the possession of the party," rather than merely under its control.  328 F.R.D. 242, 248 (D.N.D. 2018).

But the rule does not say that.  Rule 34(a)(1) limits requests for production to "items in the responding party's possession, custody, or control."  Rule 34(b)(2) dictates the procedure for responding.  As part of that procedure, Rule 34(b)(2)(B) provides options for production or inspection that the responding party may choose from.  There are not separate procedures for documents in the party's possession, documents in the party's custody, and documents under the party's control.  Under Scott's reading, a procedural right Rule 34 provides to the responding party is displaced by a novel right for the requesting party.  That is not an expansive reading—it is a contradiction of the rule's plain language.  See Amchem Prods. v. Windsor, 521 U.S. 591, 620 (1997) ("[C]ourts must be mindful that the rule as now composed sets the requirements they are bound to enforce. . . . Courts are not free to amend a rule outside the process Congress ordered.")

Taking a second approach, Atrium directs the court's attention to "copies of the imaging studies related to Plaintiff's left knee and ankle" that are missing from the records supplied by Mr. Woods.  Docket No. 37 at p. 7.  In Atrium's reply brief, it cites "the actual MRI films" as missing.  Docket No. 42 at p. 5.  But the motion before the court is not to compel these missing medical materials, and nowhere in the meet-and-confer emails do counsel discuss them.  See generally Docket Nos. 38-3, 38-5 & 38-8.  Atrium introduces them to prove that if it "had been provided with HIPAA authorizations, it could contact the medical provider to get the MRI films.  As it currently stands . . . Atrium is left without recourse."  Docket No. 42 at p. 5.

But that is incorrect.  Atrium's first recourse is to meet and confer with Mr. Woods to retrieve the documents or tangible things it believes are missing but responsive to its request.  FED. R. CIV. P. 37(a)(1).  If Mr. Woods is in "possession, custody, or control" of those documents or tangible things but refuses to provide them, Atrium's recourse is to move to compel their production.  FED. R. CIV. P. 34(a)(1), 37(a)(3)(B)(iv).  If Mr. Woods is not in "possession, custody, or control" of those documents or tangible things, Atrium's recourse is a subpoena duces tecum.[3]  FED. R. CIV. P. 45(a)(1)(D).

---

[3] Any distant concern that a specific authorization might be necessary before a third-party complies with a subpoena cannot justify compelling Mr. Woods to provide a blanket authorization now or ever.  Contra Scott, 328 F.R.D. at 249.  The issue of such a specific waiver is not before the court and no opinion is expressed as to the court's authority to compel one.

Atrium suggests that this court should follow the "clear preference within this Circuit" to require authorizations. Docket No. 42 at p. 6 (citing Scott, 328 F.R.D. at 248 (collecting cases)). But even Scott conceded that the Eighth Circuit district courts that "ordered the execution of releases," did so "with little or no discussion about the court's authority to do so." Scott, 328 F.R.D. at 248. This court is duty-bound to adhere to the text of the federal rules. Walker v. Armco Steel Corp., 446 U.S. 740, 750 n.9 (1980) ("The Federal Rules should be given their plain meaning."); cf. Van Buren v. United States, 593 U.S. ___, ___, 141 S. Ct. 1648, 1654 (2021) ("[W]e start where we always do: with the text."). The text of Rule 34 dictates a holding contrary to Scott and the opinions it cites.

Atrium's appeal to efficiency is unpersuasive. See Docket No. 42 at p. 6. Yes, the rules of civil procedure seek "to secure the just, speedy, and inexpensive determination of every action and proceeding." FED. R. CIV. P. 1. But Rule 1 first announces that "[t]hese *rules* govern the procedure in all civil actions." Id. (emphasis added). In other words, Rule 1's aspirations do not exist in a vacuum—the bounds of the speed and thrift it seeks are limited by, and must be harmonized with, other policy choices—represented by other rules. One such rule, Rule 34, tells us that a responding party to a request for production gets to choose the manner of production. FED. R. CIV. P. 34(b)(2)(B). Any efficiency offered by the revocation of that choice is beside the point.

## CONCLUSION

Based on the foregoing facts, law, and analysis, it is:

ORDERED that Atrium's Motion to Compel [Docket No. 36] is denied.

Atrium's expenses are denied.  FED. R. CIV. P. 37(a)(5)(A)(ii).

Mr. Woods does not seek expenses and opines that "[a]ttorney's fees are not appropriate in this case for either party."  The court will respect Mr. Woods' wishes.  FED. R. CIV. P. 37(a)(5)(B).

## NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.  The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained.  See FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A).  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Id.  Objections must be timely and specific in order to require review by the district court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 30th day of April, 2024

BY THE COURT:

VERONICA L. DUFFY

United States Magistrate Judge